UNITED STATES *v.* NATIONAL FREIGHT Co. (No. 3895) [1]

United States Court of Customs and Patent Appeals, November 4, 1935

*Joseph R. Jackson*, Assistant Attorney General (*John J. McDermott* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*James W. Bevans* for appellee.

[1] T. D. 47993.

[Oral argument October 9, 1935, by Mr. Folks and Mr. Bevans]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The appellee imported at the port of New York, under the Tariff Act of 1930, an instrument described by the appraiser as one Hilger measuring micrometer, which was classified for duty by the collector under paragraph 228 (a) of said tariff act, which subparagraph is as follows:

PAR. 228. (a) Spectrographs, spectrometers, spectroscopes, refractometers, saccharimeters, colorimeters, prism-binoculars, cathetometers, interferometers, haemacytometers, polarimeters, polariscopes, photometers, ophthalmoscopes, slit lamps, corneal microscopes, optical measuring or optical testing instruments, testing or recording instruments for ophthalmological purposes, frames and mountings therefor, and parts of any of the foregoing; all the foregoing, finished or unfinished, 60 per centum ad valorem.

Protest was made by the appellee, claiming the merchandise to be dutiable under paragraph 396 of said act, which paragraph covers certain hand tools. By amendment to the protest it was claimed that the merchandise was dutiable as a scientific and laboratory instrument, wholly or in chief value of metal, and not plated with gold, silver, or platinum, finished or unfinished, not specially provided for. The claim under said paragraph 396 was thereafter abandoned, and the importer relied solely on its claim under said paragraph 360, as a scientific instrument. The United States Customs Court sustained the claim under said paragraph 360, and the Government has appealed.

It was stipulated on the hearing that the imported merchandise is composed in chief value of base metal, not plated with gold, silver, or platinum, or colored with gold lacquer.

It appears from the testimony that the article of importation is quite large, and it was not brought into court. However, photographs were provided, which disclose its construction and appearance. Testimony covering its uses was also produced. From the testimony of Professor Shenstone, associate professor of physics at Princeton University, it appears that the instrument is used to facilitate the measurement of the wave lengths of light emitted by any light-emitting source; for instance, the witness presented a photograph on glass of the spectrum of a certain type of electrical discharge. The use of the instrument is for the measurement of the actual length and positions of the lines of this spectrum. This measurement requires the greatest exactness in order to be of any value, and in order that the character of the light-emitting source may be ascertained. By means of the instrument, it is possible to measure the

exact position of the various lines of the spectrum, the instrument being accurate in measurements as small as 1/250,000 of an inch. The reading of the measurements is made by a microscope mounted on the instrument, which microscope contains cross hairs, and by which it is possible to magnify and observe the various lines upon the spectrum and to read the necessary measurements. The machine is fitted with various scales, screws, and other devices, by which the accuracy of the measurement is greatly increased, and it seems fairly well established that the particular instrument involved here is used only for scientific purposes. Considerable testimony was introduced as to the commercial and utilitarian use of similar micrometers, but we deem it unimportant to enter upon that subject matter here. It is well established, from the testimony, that the complete purpose of this instrument cannot be accomplished without the aid of the microscope aforesaid, as it is impossible to make the necessary readings with the naked eye. In other words, the microscope is shown to be an essential part of the mechanism.

The decision in this case by the trial court was made on January 31, 1935, and the trial court did not have an opportunity to note our decision in *Ferner, Executrix, etc.*, v. *United States*, 23 C. C. P. A. (Customs) 62, T. D. 47735, our judgment in that case having been delivered on May 27, 1935. In the *Ferner* case, *supra*, we were considering certain spectrographic comparators and a universal measuring machine, which had been classified under said paragraph 228 (a), and were variously claimed to be dutiable under paragraph 372 as machines, paragraph 360 as scientific instruments, paragraph 353 as electrical articles, or under paragraph 228 (b) as optical instruments. The instruments in question were large, and, while not introduced in court, were thoroughly explained by the importer, Mr. Ferner. They were designed to be, and were, used for the purpose of very accurate measurements and measurement comparisons, and included a framework and adjusting machinery for moving the objects to be measured past a scale of line measurements, and under a microscope or microscopes which were integral and essential features of the device. The principal distinction between that case and the one now at bar was that there was no showing in the *Ferner* case that the instruments were designed for or used in pure science, while here there is testimony to that effect on the part of the importer.

In the *Ferner* case, after analyzing the various provisions of law, including the congressional history of the involved paragraphs, we expressed the conclusion that inasmuch as the microscopes were an essential part of the machines, the imported article was properly classified as an optical measuring instrument under said paragraph 228 (a).

We are of opinion that said provision for optical measuring instruments is more specific than one for scientific instruments. Therefore,

if the imported merchandise here constitutes an optical measuring instrument, it should be classified under said paragraph 228 (a) rather than under said paragraph 360.

In *United States* v. *Clay Adams Co., Inc.*, 20 C. C. P. A. (Customs) 285, T. D. 46078, there was a contest between the relative specificity of the statutory terms "scientific instruments", named in said paragraph 360, and "optical instruments", as named in paragraph 228 (b) of said act, and as applied to certain imported projection apparatus. In that case, also, it was urged that said language, "scientific instruments", should be held to be the more specific, as it was claimed to be a "use" provision. The court, however, divided on the matter, the majority holding the question of relative specificity to be a close one. Judge Garrett dissented, and Judge Hatfield specially concurred, basing his concurrence upon the sole theory that "optical instruments" was more specific than "scientific instruments." If the court was unable to agree with the importer's contention in that case, it certainly should not do so here, where the language involved is "optical *measuring* instruments." (Italics ours.)

On the authority of said *Ferner, Executrix, etc.* v. *United States, supra*, we must come to the conclusion that the imported merchandise constitutes an optical measuring instrument, and, therefore, find that it was properly classified by the collector.

The decision of the United States Customs Court is *reversed*.